Brian A. Sun (State Bar No. 089410)
basun@JonesDay.com
Rasha Gerges Shields (State Bar No. 218248)
rgergesshields @JonesDay.com
Kerry C. Fowler (State Bar No. 228982)
kcfowler@JonesDay.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA  90071.2300
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

Attorneys for Plaintiff
NIAGARA BOTTLING, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| NIAGARA BOTTLING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RITE-HITE COMPANY, LLC, RITE-HITE PRODUCTS CORPORATION, ARBON EQUIPMENT CORPORATION, ELETTRIC 80, INC., and DOES 1-10, inclusive,<br><br>Defendants. | Case No. _____<br><br>**PLAINTIFF NIAGARA BOTTLING, LLC'S COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT**<br>**(2) BREACH OF EXPRESS WARRANTY**<br>**(3) BREACH OF IMPLIED WARRANTY FOR A PARTICULAR PURPOSE**<br>**(4) STRICT LIABILITY— DESIGN DEFECT**<br>**(5) NEGLIGENCE**<br>**(6) MISREPRESENTATION**<br>**(7) UNFAIR COMPETITION**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiff Niagara Bottling, LLC ("Niagara") brings this action against Rite-Hite Company, LLC, Rite-Hite Products Corporation, and Arbon Equipment Corporation (collectively, "Rite-Hite" or "Rite-Hite defendants") and Elettric 80, Inc. ("E80"), and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction, pursuant to 28 U.S.C. § 1332, because there is diversity among the parties and the amount in controversy exceeds the sum or value of $75,000.

2. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Additionally, various contracts described below contain forum-selection clauses establishing venue in this District.

## THE PARTIES

3. Niagara is a limited liability company organized and existing under the laws of the State of Delaware, with its principle place of business in Ontario, California. Niagara is a family-owned business and is a leading bottled water manufacturer in the United States, supplying major retailers across the nation with purified, sparkling, and vitamin enhanced water. Niagara has facilities across the country, including in California, Georgia, Ohio, Wisconsin, Texas, Washington and Indiana.

4. On information and belief, Rite-Hite is a collection of companies that distribute and service equipment for use on commercial loading docks. Collectively, the Rite-Hite defendants operated together as one entity to negotiate, sell, design, service, and install dock levelers for Niagara. Rite-Hite Company, LLC (successor-in-interest to Rite-Hite Corporation) is a Wisconsin limited liability company. Rite-Hite Products Corporation, and Arbon Equipment Corporation are each Wisconsin corporations. Each of the Rite-Hite defendants is located at 8900 North Arbon Drive, Milwaukee, Wisconsin 53223. Niagara is informed and

believes, and based thereon alleges, that, at all relevant times herein referred to, each of the Rite-Hite defendants was the agent, principal, representative and/or employee of the other Rite-Hite defendants and, in doing the acts alleged herein, was acting within the scope of such agency, representation, and/or employment.

5. E80 is an Illinois corporation, with its principal place of business in Skokie, Illinois. E80 manufactures and distributes laser-guided vehicles ("LGVs") for use in commercial distribution settings.

6. As of the date of the filing of this Complaint, Niagara is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore Niagara sues such defendants by said fictitious names. Niagara is informed and believes, and based thereon alleges, that each defendant sued in a fictitious name is in some manner responsible for the events and acts herein referred to and caused damages to Niagara as herein alleged. It is believed that DOES 1 through 10 may include other entities related to the named defendants and/or their individual officers, directors and/or employees. When Niagara learns said defendants' true names and the facts giving rise to causes of action against these defendants, Niagara will amend this Complaint to allege the true names and capacities of these defendants.

## BACKGROUND

### A. Niagara's Purchases of E80 LGVs

7. Niagara operates beverage bottling and distribution plants at a number of locations throughout the country. Among the logistical challenges Niagara faces in its business is the safe and efficient loading and unloading of trucks transporting Niagara's products to and from its distribution plants.

8. Beginning in 2009, Niagara entered into negotiations with E80 for the design and purchase of LGV forklifts for use at Niagara's plant. E80's LGV forklifts are able to autonomously load pallets carrying Niagara's products onto trucks ready for shipment, thus increasing the safety and efficiency of Niagara's

operations. Niagara began taking delivery of E80's LGVs in June 2010. At the time of its original purchase of LGVs, E80 represented that that the total weight of each LGV (including with its battery) was approximately 7,660 kg (about 16,887 pounds). Knowing the true weight of the LGVs is material to Niagara's ability to use the LGVs safely and effectively at Niagara's facilities.

9. In 2012, E80 represented to Niagara that it had made modifications to its LGVs, such that the new models were now approximately 2,200 pounds lighter than the earlier models. E80 submitted numerous design documents to Niagara, which detailed the dimensions and weight of the newer LGVs. For instance, in September 2012, E80 provided Niagara with a PowerPoint presentation that identified modifications E80 made to the LGVs, including that the new LGVs would go from a weight of 7,600 kg (16,534 pounds) down to 6,500 kg (14,330 pounds). E80 confirmed the lower weight of its LGVs in several documents it provided to Niagara, including design data specifications that were provided to Niagara on or about September 6, 2012, September 10, 2013, June 30, 2014, and August 13, 2014.

10. Based on E80's representation that the new LGVs weighed 6,500 kg (14,330 pounds), Niagara reasonably believed that the total weight of the LGVs when fully loaded with two pallets of bottled waters was approximately 19,530 pounds.

11. Prior to 2014, Niagara's orders of LGVs from E80 were subject to specific written purchase orders, which Niagara would submit to E80 containing the terms and conditions of the purchase order. E80 accepted these terms by accepting the purchase orders and fulfilling the orders as described.

12. Starting in 2014, Niagara's purchases of LGVs from E80 became subject to a written Master Agreement. When Niagara would purchase additional LGVs, Niagara and E80 would execute amendments to the Master Agreement (hereinafter, the Master Agreement and subsequent amendments are collectively

1  referred to as the "Master Agreement").  The original Master Agreement expressly
2  incorporated the LGV design specifications that were provided to Niagara in
3  August 13, 2014, which indicated that the weight of an LGV was 6,500 kg.

4      13.  In the Master Agreement, Niagara and E80 agreed, among other
5  things, that: (a) E80 would design and manufacture its LGVs to conform to the
6  technical specifications set forth in each purchase order submitted by Niagara;
7  (b) the Agreement was governed by the California Commercial Code; and (c)
8  Niagara was relying on E80's expertise in manufacturing the LGVs to meet
9  Niagara's specific needs.

10     14.  Since 2009, Niagara has purchased more than 280 LGVs from E80,
11 including more than 250 since E80's representations (beginning in 2012) that its
12 LGVs weighed 1,000 kilograms less than previous models.

### B.  Niagara's Purchases of Rite-Hite Dock Levelers

15.  Dock levelers literally bridge the gap between Niagara's distribution plants and trucks awaiting shipment.  A dock leveler is a ramp-type device that allows Niagara's LGVs to move cargo from a loading dock to trailers for shipping and receiving purposes.  *See* RHH-4000 Hydraulic Loading Dock Leveler, RITEHITE.COM (*available at* [https://www.ritehite.com/en/am/resource-center/videos/c57787888a9c457ab218fe337abc17bb/rhh4000](https://www.ritehite.com/en/am/resource-center/videos/c57787888a9c457ab218fe337abc17bb/rhh4000)).

16.  From 2009 to 2015, Niagara spent more than $7,000,000 upgrading its facilities by purchasing more than 200 RHH4000 dock levelers from Rite-Hite for use at facilities using LGVs.  Specifically, Niagara purchased Rite-Hite dock levelers for use at its Rialto, CA, Atlanta, GA, Plainfield, IL, Columbus, OH, Houston, TX, San Antonio, TX, Tacoma, WA, and Kenosha, WI facilities, where Niagara also used E80's LGVs to load and unload trucks.

17.  Rite-Hite advertised its RHH4000 dock levelers as rugged, durable, and specifically designed to withstand heavy loads.  Rite-Hite represented that the dock levelers would have a lifespan of at least 10 years.  Rite-Hite also represented

that its dock levelers were designed and manufactured in accordance with industry standards. Prevailing industry standards require that certain safety factors be engineered into products like dock levelers. Those industry standards require that dock levelers be able to carry an additional 25% above their rated capacity, meaning that, if Rite-Hite's dock levelers were built in conformance to industry standards, they would have an actual capacity of 25,000 pounds. Knowing the true weight capacity of the dock levelers is material to Niagara's ability to use the dock levelers safely and effectively at Niagara's facilities.

18. Rite-Hite advertises its dock levelers as being designed and manufactured in accordance with industry standards because Rite-Hite knows that Niagara would rely on such a representation in selecting its dock levelers.

19. Niagara's purchases from Rite-Hite were subject to individually negotiated purchase orders. These purchase orders incorporated Niagara's standard terms and conditions, which included, among other provisions: (a) warranties by Rite-Hite that it was familiar with Niagara's particular requirements, including Niagara's product and packaging dimensions; (b) Rite-Hite's acknowledgment that Niagara was relying on Rite-Hite's expertise in recommending its dock levelers; and (c) the statement that Rite-Hite "guarantee(d) and warrant(ed) that all goods will be manufactured, assembled and commissioned in accordance with prevailing industry standards, and further guarantees that all goods will be fit for their intended, particular and represented purposes."

20. Rite-Hite accepted the terms in Niagara's purchase orders by accepting each purchase order without further negotiation of its terms, and then fulfilling the order.

21. Additionally, several of the purchase orders expressly required that the purchased dock levelers be designed to carry a gross load of up to 22,500 pounds.

22. In June 2014, Niagara and Rite-Hite entered into a Global Account Agreement in which Rite-Hite agreed to "provide loading dock and specialty door

engineering and design assistance," which included the design and development of site-specific performance specifications.

### C. The Failure of Rite-Hite's Dock Levelers

23. Beginning in 2014, Rite-Hite began making repairs on "stringers" and broken welds in the dock levelers at Niagara's facilities. This sort of damage indicates that the dock levelers were not designed to withstand their stated capacity of 20,000 pounds, much less the 25,000 pounds required to meet industry standards.

24. From April 2016 to September 2016, Rite-Hite began informing Niagara that the problem was widespread, and likely caused by the use of LGVs that weighed more than the dock levelers could handle.

25. Niagara began investigating the cause of the failures, only to learn that both E80 and Rite-Hite had misled Niagara.

26. Niagara's investigation revealed that, rather than decreasing in weight as E80 had promised in 2012, E80's LGVs had in fact *increased* from 21,000 pounds to 22,000 pounds when fully-loaded. Further review of the amendments to the Master Agreement revealed that E80 had inserted this increase into an amendment in August 2015, without informing Niagara that it was making this change, or that E80 could not deliver LGVs that weighed less than 20,000 pounds when fully loaded.

27. Additionally, Niagara conducted analysis of the failed dock levelers, which revealed that they were not manufactured in accordance with industry standards. Niagara's analysis revealed that the dock levelers could not carry a load of anywhere near 20,000 pounds, much less the 25,000 pounds required to meet industry standards.

28. Further, it is apparent that Rite-Hite knew that the dock levelers were underperforming, as Rite-Hite intentionally left repairs it made to broken welds out of maintenance logs it maintained. Additionally, Rite-Hite improperly maintained the dock levelers, further exacerbating the damage.

29. As a result of E80's and Rite-Hite's breach of contract, breach of express and implied warranties, negligence, misrepresentations and failures, Niagara spent millions of dollars investing in LGVs and dock levelers that did not meet their stated specifications or industry standards, and more than $3,000,000 replacing the failed dock levelers.

## First Cause of Action

(Breach of Contract Against E80)

30. Niagara incorporates by reference all preceding paragraphs of this Complaint.

31. The purchase orders entered into prior to 2014 and the Master Agreement are binding contracts between Niagara and E80.

32. Niagara fully performed its obligations under the purchase orders and Master Agreement.

33. The purchase orders and Master Agreement required, among other things, that E80 design and manufacture LGVs at the specifications E80 promised to Niagara, including that the LGVs would weigh 6,500 kg.

34. The purchase orders and Master Agreement also required E80 to design and manufacture LGVs suited to Niagara's specific needs. E80 was obligated to ascertain the conditions at Niagara's various plants where the LGVs were to be delivered and used, including ascertaining the limits of the dock levelers.

35. E80 breached the purchase orders and the Master Agreement by failing to design and manufacture LGVs according to the agreed-upon specifications or in a manner that met Niagara's requirements, namely that the LGVs weigh less than 20,000 pounds when fully loaded.

36. In addition, in May 2016, Niagara notified E80 about the discrepancy in the weights of its LGVs versus Niagara's requirements. Niagara specifically informed E80 that Rite-Hite was blaming the failure of the dock levelers on the overweight LGVs. E80 refused to engage in discussions as to how it could rectify

the situation as required by the warranty provisions of the Master Agreement, saying only that it was premature.

37. Niagara has suffered damages caused by E80's breach, as Niagara would not have invested millions of dollars on LGVs that did not meet their stated specifications.

## Second Cause of Action

(Breach of Contract Against Rite-Hite)

38. Niagara incorporates by reference all preceding paragraphs of this Complaint.

39. When Niagara purchased dock levelers from Rite-Hite, it did so by submitting detailed purchase orders to Rite-Hite. These purchase orders spelled out Niagara's specific requirements (*e.g.*, number of dock levelers needed, timing required, delivery instructions, etc.) as well as the terms and conditions Niagara required Rite-Hite to agree to. Rite-Hite accepted Niagara's offer by accepting the purchase orders and fulfilling the orders. Thus, the purchase orders are binding contracts between Rite-Hite and Niagara.

40. The purchase orders obligated Rite-Hite to ascertain Niagara's specific needs at the plant location relevant to the specific order. Rite-Hite was obligated to design and provide dock-levelers that met Niagara's specific needs, including that any dock levelers be sufficiently strong to bear the weight of the LGVs in use at Niagara's facilities.

41. Numerous purchase orders specifically required Rite-Hite to provide dock-levelers rated with a capacity of 22,500 pounds.

42. The purchase orders also obligated Rite-Hite to manufacture all dock levelers in accordance with industry standards, meaning that, at a minimum, the dock levelers would be able to support a load of up to 25,000 pounds.

43. Further, the 2014 Global Account Agreement required Rite-Hite to design and provide dock levelers specific to Niagara's needs, including taking into

account Niagara's use of LGVs.

44. Niagara fully performed its obligations under all of the purchase orders, as well as the 2014 Global Account Agreement.

45. Rite-Hite breached its contractual obligations to Niagara by providing dock levelers that were not capable of supporting the weight of the LGVs in use at Niagara's facilities.

46. Rite-Hite further breached its contractual obligations by failing to provide dock levelers manufactured in accordance with industry standards.

47. Rite-Hite's breach of its contractual duties to Niagara has caused Niagara to suffer damages by forcing Niagara to spend millions of dollars on dock levelers that did not conform to industry standards or stated specifications, and incur more than $3,000,000 in replacement costs for the failed dock levelers.

### Third Cause of Action

(Breach of Express Warranty Against All Defendants)

48. Niagara incorporates by reference all preceding paragraphs of this Complaint.

49. In the purchase orders entered into between Niagara and E80 prior to 2014 and in the Master Agreement, E80 expressly warranted that the LGVs it delivered to Niagara would comply with the specifications agreed to with Niagara. In doing so, E80 expressly warranted that it would deliver LGVs that would work with Niagara's existing facilities, including Niagara's dock levelers.

50. For the LGVs Niagara ordered in 2012 and later, the LGVs' weight, which exceeded 20,000 pounds in the first instance, and then increased over time, was a material defect in the design and manufacture of the LGVs, which is covered by E80's warranties in the Master Agreement.

51. Niagara notified E80 of the discrepancy in the weight of the LGVs and Niagara's requirements within a reasonable time of learning that the LGVs were overweight.

52. To date, E80 has refused to rectify the situation by either replacing the LGVs with units that meet Niagara's requirements, or by reimbursing Niagara for the costs it has incurred in replacing the failed dock levelers that Rite-Hite claims was caused by E80's overweight LGVs.

53. Likewise, in each of the various purchase orders Rite-Hite accepted, as well as the 2014 Global Account Agreement between Niagara and Rite-Hite, Rite-Hite expressly warranted that it would design and provide dock levelers designed to meet Niagara's specific needs and that they would be manufactured in accordance with industry standards.

54. Rite-Hite's failure to design and provide dock levelers that met industry standards or Niagara's specific needs, as they were not capable of carrying the loaded weight of the LGVs in use at Niagara's facilities, was a material defect in both the design and manufacture of the dock levelers.

55. In 2016, when the systematic failure of Rite-Hite's dock levelers became apparent, Rite-Hite refused to honor its express warranties.

56. On August 3, 2018, Niagara notified Rite-Hite in writing of its failure to provide dock levelers that met the terms of Rite-Hite's express warranties.

57. Rite-Hite refused to substantively respond to Niagara's letter, choosing instead to file a frivolous and anticipatory lawsuit in the Eastern District of Wisconsin (Case No. 2:18-cv-1394).

58. As a result of Defendants' breaches of their respective express warranties, Niagara has suffered damage in the form of its purchase price for products that did not meet their stated specifications or industry standards, as well as the expenses it incurred in replacing the failed dock levelers.

### Fourth Cause of Action

(Breach of Implied Warranty For a Particular Purpose

Against All Defendants)

59. Niagara incorporates by reference all preceding paragraphs of this

Complaint.

60. In contracting with Niagara to provide LGVs and dock levelers, E80 and Rite-Hite each knew or had reason to know of Niagara's specific requirements and the particular purpose for the use of the LGVs and dock levelers at Niagara's distribution facilities. E80 and Rite-Hite were each advised of Niagara's specific requirements and the total loaded weight of the LGVs that the dock levelers would need to support. Specifically, E80 knew or had reason to know that Niagara required LGVs whose total loaded weight would be less than the stated 20,000 pound limit of Rite-Hite's dock levelers. Likewise, Rite-Hite knew or had reason to know that its dock levelers would need to be able to carry loads up to 25,000 pounds to conform to industry standards.

61. Accordingly, under California law, E80 and Rite-Hite each implicitly warranted that the LGVs and dock levelers they sold to Niagara, respectively, would be fit for Niagara's specific purposes.

62. Niagara justifiably relied on E80's and Rite-Hite's skill, expertise, and judgment, as they held themselves out as having particular knowledge and capability to design and deliver LGVs and dock levelers, respectively, that were suitable for their intended purpose and met Niagara's stated needs and requirements.

63. E80 and Rite-Hite each breached the implied warranty of fitness for a particular purpose by providing LGVs and dock levelers, respectively, that did not meet Niagara's specific purposes. As alleged herein, the LGVs and dock levelers were not suitable for the particular purpose that the parties agreed to. The LGVs are heavier than discussed between Niagara and E80, and therefore not suitable for Niagara's specific purposes. Likewise, the dock levelers did not meet Niagara's specific needs and were not capable of carrying the loaded weight of the LGVs in use at Niagara's facilities.

64. As a result of E80's and Rite-Hite's respective breaches of their

implied warranties for a particular purpose, Niagara has suffered damage in the form of its purchase price for products that did not meet their stated specifications or industry standards, as well as the expenses it incurred in replacing the failed dock levelers.

### Fifth Cause of Action

(Strict Product Liability—Design Defect Against All Defendants)

65. Niagara incorporates by reference all preceding paragraphs of this Complaint.

66. As alleged herein, Rite-Hite designed, manufactured and installed the RHH4000 dock levelers acquired by Niagara for use at its facilities. Likewise, E80 designed and manufactured LGVs for use at Niagara's facilities.

67. After learning of Niagara's requirements, Rite-Hite represented that it was capable of designing dock levelers that met Niagara's needs, and specifically that its RHH4000 dock levelers were rated to be able to carry loads up to 20,000 pounds, with a 10-year life expectancy. However, the dock levelers were defectively designed in that they failed to conform to industry standards or to the specifications provided by Niagara to Rite-Hite to meet Niagara's needs and were inadequate to support the fully loaded LGVs that were used at Niagara's facilities to load Niagara's trucks.

68. Similarly, after learning of Niagara's requirements, E80 represented that it was capable of designing LGVs that met Niagara's needs, and specifically that in 2012 and later, the LGVs would weigh 6,500 kg. However, the LGVs were defectively designed in that they failed to conform to the specifications provided by Niagara to E80 to meet Niagara's needs and were overweight by approximately 1,000 kg.

69. As a direct and proximate result of the design defects in the dock levelers and LGVs, Plaintiff has suffered damages in the form of its purchase price for products that did not meet their stated specifications or industry standards, as

well as the expenses it incurred in replacing the failed dock levelers.

### Sixth Cause of Action

(Negligence Against Rite-Hite)

70. Niagara incorporates by reference all preceding paragraphs of this Complaint.

71. As herein alleged, Rite-Hite designed, manufactured, serviced, and installed the dock levelers in Niagara's distribution facilities.

72. Rite-Hite was negligent in its design, manufacture, servicing, and installation of the dock levelers in Niagara's distribution facilities in that the dock levelers were not able to carry loads up to 20,000 pounds, with a 10-year life expectancy, as represented by Rite-Hite, or the 25,000 pounds as required by industry standards, and that the dock levelers developed stingers, broken welds, and ultimately failed on a widespread basis requiring replacement of all Rite-Hite dock levelers.

73. As a result of Rite-Hite's negligence in the design, manufacture, servicing, and installation of the dock levelers, Niagara has suffered damages in the form of its expenses in replacing the failed dock levelers.

### Seventh Cause of Action

(Misrepresentation Against All Defendants)

74. Niagara incorporates by reference all preceding paragraphs of this Complaint.

*Specific Allegations of Misrepresentation As to E80*

75. On September 20, 2012, E80 provided a PowerPoint presentation that included its recommendations to Niagara for LGV purchases. This presentation stated that E80's LGVs would weigh 14,330 pounds and have a total loaded weight of 19,530 pounds for all LGVs ordered in the future. E80 then repeated this total weight figure several times in 2013 and 2014.

76. This representation was false, and at a minimum, E80 had no

reasonable grounds for believing its representation as to the weight of its LGVs to be true.

77. E80 made this representation with the intent that Niagara rely on it.

78. Niagara did in fact rely on this representation in placing its orders for LGVs and this reliance was justified.

79. Niagara's reliance on E80's misrepresentation damaged Niagara, causing Niagara to spend millions of dollars on LGVs that did not conform to their stated specifications.

80. At a minimum, E80 made negligent misrepresentations to Niagara by making statements as to the actual weight of E80's LGVs which E80 had no reasonable basis to believe were true.

### *Specific Allegations of Misrepresentation As to Rite-Hite*

81. In accepting Niagara's purchase orders, and in executing the Global Account Agreement, Rite-Hite represented that it would deliver dock levelers manufactured in accordance with industry standards, with a lifespan of at least 10 years, and thus strong enough to meet Niagara's needs. On multiple occasions, Rite-Hite represented that it would manufacture and deliver dock levelers capable of carrying loads up to 22,500 pounds.

82. These representations were false, and at a minimum, Rite-Hite had no reasonable grounds for believing its representation regarding the ability of its dock levelers to carry 20,000 pounds or more, or that its dock levelers met industry standards, which would have required the dock levelers to carry 25,000 pounds, or that the dock levelers had a lifespan of at least 10 years.

83. Rite-Hite further demonstrated its awareness that it had misled Niagara when Rite-Hite omitted the repairs it was making on broken welds on the failing dock levelers.

84. Rite-Hite made these representations with the intent that Niagara rely on them.

- 14 -

COMPLAINT

85. Rite-Hite knew or had reason to know that Niagara was relying on Rite-Hite's representations regarding the strength of its dock levelers.

86. Niagara did in fact rely on these representations, ordering hundreds of dock levelers from Rite-Hite believing that the dock levelers would have a lifespan of at least 10 years and would be able to carry the weight of Niagara's LGVs as they loaded and unloaded trucks. Given Rite-Hite's expertise, this reliance was justified.

87. Niagara's reliance on Rite-Hite's misrepresentations damaged Niagara, causing Niagara to purchase levelers doomed to fail, and then forcing Niagara to incur more than $3,000,000 in costs replacing the dock-levelers. Rite-Hite's misrepresentations further damaged Niagara by causing Niagara to incur more than $3,000,000 in costs replacing deck levelers that could not bear the weight of the LGVs in use at Niagara's facilities.

88. At a minimum, Rite-Hite made negligent misrepresentations to Niagara by making statements as to the design, manufacture, and resulting strength of its dock levelers which Rite-Hite had no reasonable basis to believe were true.

### Eighth Cause of Action
(Unfair Competition Against All Defendants)

89. Niagara incorporates by reference all preceding paragraphs of this Complaint.

90. Under California law, the making of false and/or misleading statements in the course of business constitutes an unfair business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL"). The acts and omissions by Rite-Hite and E80 described above, and specifically the false and/or misleading statements made by each Defendant, constitute unfair and unlawful business practices within the meaning of the UCL.

91. E80's statements and representations to Niagara that E80's LGVs weighed 6,500 kg were false and misleading. Likewise, E80's statement that the

weight of its LGVs was decreasing was false and misleading.  E80 made these statements in order to induce Niagara to continue to purchase LGVs from E80.

92. Similarly, Rite-Hite's statements and representations to Niagara that its dock levelers were designed and manufactured in conformance with industry standards, that they had a lifespan of at least 10 years, and that they would be able to carry the weight required at Niagara's facilities were false and misleading.  Rite-Hite made these statements in order to induce Niagara to accept Rite-Hite's dock levelers and to induce Niagara to continue to order dock levelers from Rite-Hite.

93. Niagara's reliance on E80's and Rite-Hite's false representations caused Niagara to purchase LGVs that did not meet its requirements, and dock levelers that were destined to fail.

94. Niagara would not have purchased the LGVs or dock levelers had it known the truth, causing Niagara to spend millions of dollars on products that did not meet their stated specifications or industry standards, as well as incur more than $3,000,000 in costs replacing the failed dock levelers.

## **PRAYER**

WHEREFORE, Plaintiff Niagara Bottling, LLC prays for the following relief against Defendants herein:

1. On all Causes of Action, for compensatory damages according to proof at trial;

2. On the Eight Cause of action, for treble damages, as well as costs and reasonable attorneys' fees;

3. For costs of suit herein, including reasonable attorneys' fees as authorized by law; and

4. For any other relief the Court deems just and proper.

| | | | |
|---|---|---|---|
| 1 | Dated: | September 21, 2018 | JONES DAY |

By: /s/ *Rasha Gerges Shields*
Rasha Gerges Shields

*Attorneys for Plaintiff Niagara Bottling, LLC*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Niagara Bottling, LLC hereby demands trial by jury of all issues which may be tried to a jury.

Dated: September 21, 2018     JONES DAY

By: /s/ *Rasha Gerges Shields*
Rasha Gerges Shields

*Attorneys for Plaintiff Niagara Bottling, LLC*